UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM BOWEN,<br><br>      Plaintiff,<br><br> -v-<br><br>THE CITY OF NEW YORK, THE NEW<br>YORK CITY POLICE DEPARTMENT,<br>OFFICERS JOHN DOE 1 THROUGH 6,<br><br>      Defendants. | No. 09 Civ. 7585 (RJS)<br>MEMORANDUM & ORDER |

RICHARD J. SULLIVAN, District Judge:

Plaintiff William Bowen brings this action against the City of New York, the New York City Police Department ("NYPD"), and six unnamed officers of the NYPD pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violations of the Fourth, Eighth, and Fourteenth Amendments to the Constitution, as well as violations of state common law.   Before the Court is Defendants' motion to dismiss for failure to state a claim.   For the reasons that follow, Defendants' motion is granted.

I. BACKGROUND

On September 27, 2006, Plaintiff William Bowen allegedly stole a six-pack of beer from a grocery store in lower Manhattan.[1]   (SAC ¶ 9.)   Plaintiff alleges that six NYPD officers arrived at the scene and that one of the officers recognized him from past incidents with police "involving

---

[1] The second amended complaint ("SAC") alleges that the arrest at issue took place on September 21, 2006, but Plaintiff's counsel has informed Defendants that the actual alleged date of the arrest was September 27, 2006.  (*See* Declaration of Jenny Weng in Support of Defendants' Motion, filed March 26, 2010, Ex. C.)  Defendants appear to agree that this is the proper date of the arrest, as they acknowledge it as the date of the arrest in their brief to the Court. (*See* Def.'s Br. at 3.)  The Court will assume that September 27 is the date on which the Plaintiff alleges that the relevant events took place, though it bears mentioning that the exact date has no material bearing on the disposition of this motion.

homosexual men."[2]   (*Id.* ¶ 10.)   Thereafter, Plaintiff was handcuffed and escorted to a police car, at which time he complained that his handcuffs were too tight.   (*Id.* ¶¶ 11–12.)   Plaintiff alleges that the officer who allegedly recognized him "shoved" him into the police car, stated something to the effect of "this is from the gay community," and "slam[med]" Plaintiff's brow into the edge of the car, causing injury to Plaintiff.   (*Id.* ¶¶ 14–15.)

Following Plaintiff's initial detention, he was transported to Bellevue Hospital to get treatment for his head injury where he remained in handcuffs until the treating physician requested that they be removed, presumably to facilitate medical treatment.   (*Id.* ¶¶ 16–19.)   After being treated, Plaintiff was once again placed in handcuffs for an alleged duration of several hours.   (*See Id.* ¶ 20.)   Plaintiff alleges that throughout the time of his detention he was "tightly cuffed," that the handcuffs were "to [*sic*] tight," and that he complained of his discomfort to the arresting officers.   (*Id.* ¶¶ 12, 17–18, 20.)   Plaintiff alleges that the handcuffs caused "severe nerve damage" that required surgery and ongoing medical treatment, resulting in continuous "pain and discomfort" (*Id.* ¶¶ 22–24.)   Accordingly, Plaintiff claims that the actions of the Defendants deprived him of his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution.   (*Id.* ¶¶ 25–64, 71–77.)   Plaintiff separately claims that Defendants' actions constituted negligent supervision, negligent training, and intentional infliction of emotional distress in violation of state law.   (*Id.* ¶¶ 65–70, 78–81.)

This case commenced on August 31, 2009, when Plaintiff filed the original complaint. Plaintiff filed an amended complaint on September 16, 2009, and then the SAC on January 5,

---

[2] It is unclear from the SAC which officers took which actions during the course of the arrest and subsequent detention of Plaintiff.   The only officer the SAC references independently from the other officers is an unnamed officer who "recognized Plaintiff from prior involvement with the police regarding alleged incidents involving homosexual men" (SAC ¶ 10) and later "shoved him into the rear of the police vehicle" (*Id.* ¶ 13).

2010. On March 26, 2010, Defendants filed the instant motion to dismiss, which became fully briefed on May 10, 2010.

## II. STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must draw all reasonable inferences in Plaintiff's favor. *See ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Therefore, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.

Under the pleading standard enunciated in *Iqbal* and *Twombly*, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. By contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Applying this standard, if Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

III. DISCUSSION

A. Claims Against Individual Officers

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. Section 1985 provides similar relief for conspiring to deprive individuals of their constitutional rights.[3] *See* 42 U.S.C. § 1985. In New York, the statute of limitations for both § 1983 and § 1985 claims is three years, *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n. 2 (2d Cir. 2001), and the claim accrues when a plaintiff knows or has reason to know about the injury that is the basis of the action, *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003).

It is well settled in this circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages" in a § 1983 claim. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). As such, it is incumbent on § 1983 plaintiffs to identify specific individuals against whom they make claims for damages. *See* Fed. R. Civ. P. 10(a) ("The title of [a] complaint must name all the parties . . . ."); *cf. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) ("'[I]dentifying the parties to the proceeding is an important dimension of publicness." (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J.))).

In this case, however, Plaintiff has failed to plead the names of any individual officers prior to the statute of limitations expiring. Therefore, because the limitations period expired on

---

[3] Although Plaintiff brings both § 1983 and § 1985 claims, the Court will hereinafter refer to his federal claims as § 1983 claims for the sake of simplicity, since the § 1985 claims depend entirely upon the viability of the § 1983 claims. *See Young v. Cnty. of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) ("[Where] [t]here was no deprivation of a federal constitutional right . . . there can be no civil rights conspiracy to deprive that right.").

September 28, 2009,[4] and since Plaintiff still has not amended the SAC to include the names of individual officers, his individual claims must be dismissed, as they are time-barred.  *See Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) ("'[I]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.'" (quoting *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993))).

Plaintiff maintains that the statute of limitations should have been tolled because: (1) he made a "good faith effort" to ascertain the names of officers, and (2) Plaintiff believes that the officer that the NYPD claims was responsible for Plaintiff's arrest is not in fact the officer who arrested and detained him.  (*See* Pl.'s Br. at 4.)  With respect to the first objection, in § 1983 actions, federal courts are to borrow not only a state's limitations period, but also its tolling rules.  *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980).  In New York, tolling of the statute of limitations is allowed only under narrow circumstances, such as a defendant's physical absence from the state; infancy or insanity of the plaintiff; or the plaintiff being the citizen of a country at war with the United States.  *See* N.Y. C.P.L.R. §§ 207–209.  No such circumstances were present here.  Thus, as sympathetic as Plaintiff's claims of "good faith" might be, they cannot rescue his claims against individual officers.

Further, it is of no moment that Plaintiff now claims that the officer NYPD identified as being responsible for Plaintiff's arrest is in fact not the right officer.  (*See* Pl.'s Br. at 4 ("[T]he officer named and provided to plaintiff by defendant City of New York is not the officer who placed Mr. Bowen under arrest and handcuffed him.").)  The NYPD's records surrounding the

---

[4] Although Plaintiff's arrest occurred, at the latest, on September 27, 2006, the limiting date of September 27, 2009 fell on a Sunday, and thus the relevant limiting date for Plaintiff's claims was the following Monday, September 28.

arrest were disclosed at two points:   (1) on October 27, 2009, when the underlying arrest records were released to Plaintiff pursuant to N.Y.C.P.L. § 160.50, and (2) on December 23, 2009, when the remaining records — including the arrest report, complaint report, memobook entry of the arresting officer, and the criminal court file — were released to Plaintiff at the initial conference in this matter. (*See* Def.'s Reply at 3.)   Because both disclosures came well after the statute of limitations had already expired, Plaintiff's claims against the individual officers are lacking regardless of whether Plaintiff agrees factually with those disclosures.   Having filed the original complaint a mere four weeks before the statute of limitations was to expire, Plaintiff did not provide himself any realistic chance of obtaining discovery from Defendants in time to save his claims against individual officers.   Indeed, it bears repeating that Plaintiff has not named or identified any individual officers in any of the three complaints he has filed with this Court, either before or after the statute of limitations ran.   As a result, the Court grants Defendants' motion to dismiss the claims against the individual officers — Defendant Officers John Doe 1 through 6.

## B. Claims Against the City of New York

Plaintiff also brings claims against the City of New York.   Municipalities cannot be held liable for a § 1983 claim under a *respondeat superior* theory.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).   Rather, a plaintiff suing a municipality under § 1983 must plead and prove an *official policy or custom* that causes the plaintiff to be subjected to a denial of a constitutional right.   *Torraco v. Port Auth.*, 615 F.3d 129, 140 (2d Cir. 2010).

A plaintiff may satisfy the "official policy or custom" requirement in a number of ways. He can plead and prove: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not

expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

In this case, although Plaintiff alleges serious injuries resulting from his arrest and detention, he completely fails to plead any facts to support his claim that those injuries resulted from a custom or policy of the City of New York or its agents.  Plaintiff's SAC lists fifteen separate claims against Defendants but only mentions "policy or custom" in one of them.[5]  That claim — the fourteenth claim — alleges that the City and the NYPD "acted with deliberate indifference to the substantial risk of harm to Plaintiff" by "creating or condoning . . . a policy or custom under which" the NYPD:

> (a) causes or allows the assault and battery of members of the public; (b) negligently hires police officers likely to assault and batter members of the public, and otherwise deny the rights of such persons; (c) fails to take appropriate action or appropriate disciplinary measures against Police Department personnel who commit such acts; (d) fails to properly train officers; and (e) fails to properly train officers [who] negligently or intentionally commit such acts.

---

[5]  The SAC repeatedly references Defendants' "concerted unlawful and malicious detention and confinement" of Plaintiff (SAC ¶¶ 26, 30, 34, 38, 42, 46, 50, 54, 58), as well as Defendants' "concerted unlawful acts and malicious conspiracy" (*id.* ¶ 62).  The Court does not consider these to be allegations relating to a custom or policy, but rather allegations of conspiracy — a separate claim altogether.  *See Bradley v. City of New York*, No. 08 Civ. 1106 (NGG), 2009 WL 1703237, at *4 (E.D.N.Y. June 18, 2009) (noting the difference between conspiracy and "custom or policy" causes of action).  To the extent Plaintiff makes conspiracy claims, they appear to be barred in any event by the "corporate conspiracy" doctrine, which states that "the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."  *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008); *accord Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978).  The City of New York is indeed a municipal corporation, incorporated under the laws of New York.  N.Y. Gen. Mun. Law § 2 (defining "municipal corporation" as "a county, town, city, or village"); *accord Jimenez v. City of New York*, 605 F. Supp. 2d 485, 492 (S.D.N.Y. 2009) ("City of New York is a municipal corporation incorporated in New York State.").  Since Plaintiff does not claim that any Defendant was acting outside the scope of his or her employment at any relevant time, the corporate conspiracy doctrine appears *ab initio* to invalidate Plaintiff's conspiracy claims.

(SAC ¶ 76.)

Much more specificity, however, is typically required to adequately plead deliberate indifference. Indeed, Plaintiff's allegations fall well short of alleging a "specific deficiency in the city's training program," let alone a deficiency that is so "closely related to the ultimate injury" as to "actually cause[] the constitutional deprivation." *See Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 491 (S.D.N.Y. 2010) (internal quotation marks omitted). Rather, Plaintiff's allegations in this regard are classic examples of "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). They are unsupported by any *factual* allegations that the general policy or custom of the City of New York, in regard to arresting people, was characterized by specific training deficiencies or deliberate indifference. Without any factual allegations to support this theory, Plaintiff has no apparent means of connecting the alleged excessive force used by the arresting officers to the policy or custom of the City of New York, and thus his claims for relief lack facial plausibility. *See Bowen*, 706 F. Supp. 2d at 492–93 (dismissing excessive force complaint against city under comparable allegations); *Cuevas v. City of New York*, No. 07 Civ. 4169 (LAP), 2009 WL 4773033, at *3–4 (S.D.N.Y. Dec. 7, 2009) (same).

### C. Remaining Claims

Plaintiff's remaining claims include federal claims against the NYPD, as well as various state law claims against all defendants. The claims against the NYPD are improper, as the NYPD is an agency of the City of New York and therefore cannot be sued separately from the City. 17 N.Y.C. Charter § 396 (prohibiting "recovery of penalties for the violation of any law" against "any agency" of the City of New York); *see Lauro v. Charles*, 219 F.3d 202, 205 n.2 (2d Cir. 2000) (affirming this principle). Indeed, the parties agreed as much in their pre-motion letters to the

Court.  (*See* Pl.'s Pre-Motion Letter, at 2; Def.'s Pre-Motion Letter, at 2.)   As a result, all claims against the NYPD must be dismissed.

Because all of Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1367(c). In this situation, the state law claims should be dismissed without prejudice.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case *without prejudice*." (emphasis added)); *accord Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006). Nevertheless, it bears noting that Plaintiff appears to concede that he failed to preserve his state law claims, since he did not give notice to Defendants of those claims within ninety days of the claims arising, as required by New York law.   (Pl.'s Pre-Motion Letter, at 2) ("[P]laintiff agrees that the state law claims were not preserved."); *see* N.Y. Gen. Mun. Law §§50-e, 50-i (laying out notice requirement).   Failure to preserve such claims by providing notice "generally results in dismissal of claims," *Warner v. Village of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).[6]

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and all of Plaintiff's federal claims are DISMISSED with prejudice.   The Court declines to exercise

---

[6] Because Plaintiff concedes "that the state law claims were not preserved" (Pl.'s Pre-Motion Letter, at 2) and because "federal courts do not have jurisdiction to permit the filing of a late notice claim," *Warner*, 256 F. Supp. 2d at 175, only an appropriate state supreme court or county court could grant leave to serve a late notice of claim, *see* N.Y. Gen. Mun. Law § 50-e(5), (7).  The availability of filing a late notice claim, however, appears to have passed, since the extension of time may not exceed the time limit for commencing the action, N.Y. Gen. Mun. Law § 50-e(5), and as already discussed, the statute of limitations for Plaintiff's claims has already run.   Thus, because Plaintiff has not indicated that he sought any extension of time prior to the expiration of the limitations period, his state law claims are likely barred.

supplemental jurisdiction over Plaintiff's state law claims, which are DISMISSED without prejudice.

The Clerk of Court is directed to terminate the motion located at Doc. No. 15 and to close this case.

SO ORDERED.

Dated:       December 10, 2010
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/10

- 10 -